UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PORTER, INC. D/B/A<br>THUNDERBIRD PRODUCTS | CIVIL ACTION |
| VERSUS | NO. 10-1419 |
| LOUISIANA YACHTING &<br>BOATING CENTER, LLC | SECTION "F" |

ORDER AND REASONS

Before the Court are the plaintiff's motion for preliminary injunction and the plaintiff's complaint to compel arbitration. For the following reasons, the motion is GRANTED. Preliminary and permanent injunction are issued, and the parties are ordered to proceed to arbitration.

**Background**

Porter, Inc., d/b/a Thunderbird Products manufactures Formula powerboats. In September 2006, Porter entered into a Dealer Agreement with Louisiana Yachting & Boating Center, LLC, whereby LYB agreed to serve as Porter's exclusive dealer within a specified geographic area. The Agreement contains an arbitration clause that broadly provides "[a]ny dispute arising out of or relating to this Agreement shall be resolved" by good faith negotiation, followed by binding arbitration if negotiation fails. The parties agreed that Indiana law would govern the merits of any dispute. LYB also agreed to waive "any right to recover incidental, consequential or punitive damages, as well as damages for loss of distribution

1

rights, goodwill, reputation or any similar damages."

The Agreement was set to terminate on June 30 of each year unless the parties expressly renewed in writing for the following model year (July 1 through June 30). It is not clear whether the Agreement was in effect in April 2009. What is clear, however, is that their business relationship continued[1] until April 23, 2009, when LYB sent Porter a letter terminating the Dealer Agreement and, invoking Louisiana law, demanding that Porter repurchase all 2008 and 2009 inventory. See La Rev. Stat. 32:1253(A)(3)(b). In response, Porter administratively appealed the repurchase demand to the Louisiana Recreational and Used Motor Vehicle Commission three weeks later. Porter filed an amended appeal with the Commission on July 10. Six days later, LYB filed a consumer complaint with the Commission requesting an order requiring Porter to repurchase LYB's 2008 and 2009 inventory and to pay the statutory penalty. On February 26, 2010, Porter responded to LYB's complaint and requested a hearing before the Commission. Only recently, however, was the administrative panel even named.

On April 21, 2010, Porter demanded LYB submit all claims arising out of the Dealer Agreement to arbitration. The parties dispute whether LYB's repurchase demand arises out of the Agreement. LYB has continued to proceed before the Commission: it

---

[1]The Agreement provides that if no written extension is executed, Porter "may continue to authorize [LYB] to operate as a dealer under the terms and conditions set forth herein."

filed an objection to Porter's request for hearing before the Commission on April 28, 2010; it filed a second consumer complaint before the Commission on May 3, 2010, requesting that the Commission order Porter to cease and desist from pursuing arbitration. On May 6, 2010, Porter filed the present complaint requesting that LYB be enjoined from pursuing its complaint before the Commission and that LYB be ordered to proceed to arbitration and has sought injunctive relief.

Porter submits, and this Court agrees, that an injunction is appropriate in this case because LYB's Commission complaint deals with LYB's breach of the Agreement, LYB's wrongful termination of the Agreement, LYB's demand that Louisiana law and not Indiana law applies, and, finally, LYB' repurchase demand. These issues, Porter urges, fall within the scope of the arbitration clause because they arise out of or relate to the contractual relationship between the parties.

LYB responds that Porter is not entitled to an injunction because the scope of the arbitration clause, LYB says, does not encompass its repurchase demand, which, rather, arises under Louisiana statute. LYB insists, without clarity, that any claims by Porter that the Agreement was wrongfully terminated are separate and independent from its Commission complaint. Splitting hairs, LYB argues its repurchase demand could be maintained without reference to the Agreement, and therefore, it submits, it cannot be "related

to" the Agreement. Louisiana policy, LYB urges, as evidenced by the statute regarding dealer repurchase of inventory upon termination of a dealer agreement, would not be served if it were to lose its statutory right.

Finally, LYB invokes waiver: that Porter has waived its right to invoke the arbitration clause by participating in the Commission administrative complaint system and failing to mention arbitration until April 2010. LYB points out that it was Porter who first turned to the Commission after getting LYB' demand letter in May 2009.

**Law and Analysis**

I.

A. Preliminary and Permanent Injunction

It is well settled that "preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion." Bluefield Water Ass'n v. City of Starkville, Miss., 577 F.3d 250, 253 (5th Cir. 2009) (quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 196(5th Cir. 2003)); see also PCI Transport., Inc. v. Ft. Worth & Western R.R. Co., 418 F.3d 535, 545 (5th Cir. 2005). The Court can issue an injunction only if the movant shows:

> (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.

4

Ridgely v. FEMA, 512 F.3d 727, 734 (5th Cir. 2008). The standard for a permanent injunction is essentially identical, with the exception that one must prove actual success on the merits. Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987); see Greyhound Lines, Inc. v. City of New Orleans ex rel. Dept. of Pub. Utils., 29 F. Supp. 2d 339, 341 (E.D. La. 1998). The wrongful enforcement of an arbitration clause has been held to constitute irreparable harm "in and of itself." Semco, L.L.C. v. Ellicott Machine Corp. Int'l, No. 99-1928, 1999 WL 493278, at * 3 (E.D. La. July 9, 1999).

Where an arbitration agreement contemplates the use of a preliminary injunction to maintain the status quo, the district court has the power to issue a preliminary injunction for that purpose.[2] RGI, Inc. v. Tucker & Assocs., Inc., 858 F.2d 227, 230 (5th Cir. 1988). This Court has held that even where the arbitration clause does not contemplate the use of a preliminary injunction, "where the requisites for injunctive relief are satisfied, to deny such relief would potentially frustrate the congressional intent to enforce arbitration agreements." Speedee Oil Change Sys., Inc. v. State Street Capital, Inc., 727 F. Supp. 289, 292 (E.D. La. 1989).

---

[2] While the parties do not raise the issue, there is some dispute between the circuits over whether a preliminary injunction is appropriate where a case is referred to arbitration. See Speedee Oil Change Sys., Inc. v. State Street Capital, Inc., 727 F. Supp. 289, 291 (E.D. La. 1989) (listing cases).

B. The Arbitration Clause

The Federal Arbitration Act establishes a national policy in favor of arbitration. See Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22-24 (1983). Among other things, the FAA requires that where a suit presents an issue referable to arbitration based on an arbitration agreement, the Court "shall upon application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, where the Court finds a written agreement to arbitrate and determines that the issues raised before it are within the scope of the agreement, the Court must grant a motion to stay the proceedings. See In re Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993). Further, the Court must order the parties proceed to arbitration upon finding that the making of the agreement or the failure to comply with the agreement is not at issue. 9 U.S.C. § 4.

In determining whether to compel arbitration, the Court must engage in a two step inquiry: "first, whether the parties agreed to arbitrate and second, whether federal statute or policy renders the claims nonarbitrable." Dealer Computer Servs., Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 886 (5th Cir. 2009). Unless the agreement unmistakably provides otherwise, the Court decides the question of arbitrability. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); Pennzoil Exploration & Prod. Co. v. Ramco

Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). Some courts have puzzled over whether it is the arbitrator who decides procedural questions like "allegation[s] of waiver, delay, or a like defense to arbitrability." Howsam, 537 U.S. at 84 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); Dealer Computer, 588 F.3d at 887.

In deciding whether the parties agreed to arbitrate the dispute in question, the Court should consider: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). Any doubts about the scope of an arbitration clause must be resolved in favor of arbitration. In re Hornbeck, 981 F.2d at 754-55. Unlike narrow clauses that require arbitration of disputes that "arise out of" the contract, broad clauses are those that govern disputes that "relate to" or "are connected with" the contract. Pennzoil, 139 F.3d at 1067. Broad arbitration clauses "are capable of expansive reach." Id. Thus, the Fifth Circuit has held that a clause in a license agreement providing that the parties arbitrate "any and all disputes between them" required the parties to proceed to arbitration of a dispute over whether a contemporaneous purchase agreement was procured by fraud because the license agreement was the "heart of their deal." Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 36, 38 (5th Cir.

7

1990); see in re Hornbeck, 981 F.2d at 755 (finding a clause requiring arbitration of "any dispute between [the parties]" was broad). The Fifth Circuit has also held that an arbitration clause providing that "any dispute, controversy or claim arising out of or in relation to or in connection with this Agreement or the operations carried out under this agreement" was indeed broad. Pennzoil, 139 F.3d at 1067. The court of appeals determined that "[w]ith such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by [the agreement] to be arbitrable." Id. at 1068. Thus, the appeals court found that a dispute arising out of a payment agreement dealing with payments under a production sharing contract was nonetheless related to the arbitration clause that purported to define the parties' rights and obligations under the production sharing contract. Id. at 1069.

The United States Supreme Court emphasizes that "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." Preston v. Ferrer, 552 U.S. 346, 359 (2008). The parties in Preston had an agreement requiring arbitration of any dispute "relating to the terms of [the contract] or the breach validity, or legality thereof." Id. at 350. A dispute over payment under the contract arose, and the defendant filed a petition before the state labor commissioner, pursuant a state statute and the required procedure,

charging that the contract was invalid and unenforceable. Id. Preston is important. In holding that the state law could not supersede the parties' choice to arbitrate, the Supreme Court noted that the defendant would not relinquish any substantive rights under state law; he would simply resolve them in an arbitral forum. Id. Indeed, the Supreme Court has elsewhere explained that "[t]here is no reason to depart from [the guidelines for determining arbitrability] where a party bound by an arbitration agreement raises claims founded on statutory rights." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (rejecting a *per se* rule excluding arbitration of statutory claims when the arbitration clause does not mention the statute and affirming the court of appeals' holding that the defendant's Sherman Act counterclaims fell within the scope of a clause requiring arbitration of "all disputes, controversies or differences which may arise [between the parties] out of or in relation to [the contract]").

### C. Waiver

If a a district court finds that a party has waived its right to arbitration, judicial proceedings will not be stayed, nor arbitration compelled. See Republic Ins. Co. v. Paico Receivables, LLC, 383 F.3d 341, 344 (5th Cir. 2004). "[W]aiver occurs when a party initially pursues litigation and then reverses course and attempts to arbitrate [or when] 'some overt act in Court . . .

9

evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" Texaco Exploration & Prod. Co. v. Clyde Engineered Prods. Co., 243 F.3d 906, 911 (5th Cir. 2001) (quoting Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 329 (5th Cir. 1999)). Because there is a strong presumption against waiver, any doubts must be resolved in favor of arbitration. Id. "In addition to invocation of the judicial process," the Fifth Circuit requires "prejudice to the party opposing arbitration" before finding the right to arbitrate has been waived. Republic, 383 F.3d at 346. Judicial resistance to waiver has been strong but uneven. The fact that an agreement to arbitrate contains a "no waiver" clause, however, is not determinative. Id. at 348.

In Republic, the Fifth Circuit found the plaintiff had waived its right to arbitration by conducting full fledged discovery during the litigation, amending its complaint, filing pretrial materials, filing motions to compel discovery and for summary judgment, and invoking the arbitration clause only days before the trial was originally scheduled to begin. Id. at 344-245. In contrast, however, the Fifth Circuit in Walker v. J.C. Bradford & Co. found no waiver by the defendant although it had served interrogatories and a request for documents, answered the plaintiff's complaint, and attended a pretrial conference before invoking the arbitration clause almost two years after the events giving rise to the conflict. 938 F.2d 575, 576 (5th Cir. 1991). The

court of appeals sympathized with the plaintiffs' frustration at the waste of time and resources, but determined that the defendant's actions in federal court were not substantial enough to overcome the presumption in favor of arbitration. Id. at 578. That is the choice this Court makes as well.[3]

### D. Repurchase Obligation

Louisiana law mandates that where a marine dealer ceases to sell a particular make of marine product, the manufacturer or distributor "shall repurchase all new and unused marine products of the current and immediate prior model year." La. Rev. Stat. 32:1268.1. A manufacturer who fails to do so is subjected to a penalty. Id. 32:1268.

### II.

The arbitration clause at issue is broad. While it does not apply to all disputes between the parties, like the clause in Pennzoil, it applies to any dispute arising out of or relating to the Agreement. See 139 F.3d at 1067. LYB's repurchase demand against Porter arises under a Louisiana statute, but this right can only arise after termination of the Dealer Agreement. Whether the

---

[3]This Court's decision in Bunge Edible Oil Corp. v. M/V Torm Rask, 756 F. Supp. 261 (E.D. La. 1991), is distinguishable. No prejudice is apparent here, the Commission proceedings have been in infancy at best, and Porter has done little to delay matters. Its conduct has been mainly responsive to LYB's cancellation of the Agreement. Moreover, in Bunge, an order to arbitrate would have meant several other non-arbitrable claims would have been stayed and unreasonably delayed.

parties contracted out of this obligation by choosing Indiana Law, whether the dealer's waiver of "any right to recover incidental, consequential or punitive damages" in any way limits the repurchase obligation, and whether an improper termination of the agreement (if there was one) entitles Porter to a set off of any repurchase obligation, all arise out of or relate to the dealer agreement. LYB's administrative claims are related to the Dealer Agreement and, therefore, subject to mandatory arbitration.

If LYB has a right to demand repurchase and statutory penalties under Louisiana law, it will not lose those rights by proceeding before an arbitral forum. The state law's process, however, is superseded by the FAA. Preston, 552 U.S. at 359.

What about the issue of waiver?[4] Although Porter went before the Commission, Porter's actions were minimal: Porter administratively reacted to LYB's conduct and later participated in a preliminary conference. No prejudice has been shown. And, although Porter waited nearly a year before seeking relief here, Porter's minimal and mere responsive actions are not sufficient to waive its contractual right to arbitration.

Accordingly, the plaintiff's motion for preliminary injunction is GRANTED; a preliminary and permanent injunction enjoining LYB

---

[4]Whether waiver is an issue to be decided by this Court or by the arbitrator, the result would be the same. Compare Moses H. Cone Mem'l Hosp. v. mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) with Omni Pinnacle, LLC v. WCC Operating Servs., Inc., 255 Fed. App'x 24, 26 (5th Cir. 2007) (unpublished).

from engaging in activities that conflict with the arbitration clause is hereby issued. LYB is ordered to participate in the arbitration process and cease and desist from pursuing the Commission proceedings. Porter shall submit a form of injunction order not later than noon, June 18, 2010.

New Orleans, Louisiana, June 17, 2010.

    _____
         MARTIN L. C. FELDMAN
       UNITED STATES DISTRICT JUDGE